UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 07-CIV-61624 - ZLOCH

MYD MARINE DISTRIBUTORS, INC., et. al.,

       Plaintiffs,

vs.

DONOVAN MARINE, INC.,
a Louisiana corporation,

       Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO ALL ISSUES

Pursuant to Fed. R. Civ. P. 56(b), defendant moves for summary judgment in its favor as to all issues. As good grounds for the relief requested defendant would show the Court that the pleadings previously filed by the parties and the affidavits served in support of the motion on this date, when combined with the Statement of Material Facts filed pursuant to Local Rule 7.5, all demonstrate that defendant is entitled to summary judgment in its favor as a matter of law.

- 2 -

## ESSENTIAL PLEADING SUMMARY

In their two count Amended Complaint [DE 5] plaintiffs allege that defendant, their "direct competitor" (*paragraphs 8 and 9*), spread "vicious lies" (*paragraph 11*) about them to five or six people in the summer and fall of 2003 (*paragraphs 10 through 17*) and then again repeated the false statements to a major customer, Bradford Marine, in December, 2004 (*paragraph 20*). Count Two of the Amended Complaint alleges that those utterances by defendant's sales representative, Tony Crespo, constitute tortious interference with the "valuable customer relationships" of the corporate plaintiff MYD Marine, for which only MYD Marine has demanded judgment for its damages. Count One of the Amended Complaint alleges that defendant was negligent in its supervision of its employee, Crespo, and breached its duty to [A.] instruct Crespo to stop spreading the "vicious lies" about plaintiffs (*paragraph 24*), and/or [B.] terminate Crespo's employment (*paragraph 25*). Plaintiffs allege that they contacted defendant in October 2003 and demanded a retraction of Crespo's "vicious lies" (*paragraph 18*). Both plaintiffs have here demanded judgment for damages to their respective reputations as a result of the alleged negligence (*paragraphs 26 and 27*).

- 3 -

Defendant's Answer and Affirmative Defenses to Amended Complaint [DE 17] essentially demands strict proof of the occurrence of any lies allegedly uttered by Crespo to anyone at any time.  Defendant has also pleaded numerous affirmative defenses, the most prominent ones of which are the bar of the "Single Publication/Single Action Rule", which does not permit multiple actions to be maintained when they arise from the same utterance upon which a failed defamation claim is based (*First Affirmative Defense*) and the bar of Florida's Statute of Limitations, [Fla. Stat. 95.11(4)(g)], which precludes litigation commenced more than two years after the allegedly false utterance is made (*Second Affirmative Defense*).

## THE SINGLE PUBLICATION / SINGLE ACTION RULE

The tortious interference claim in this case is squarely predicated upon certain specific utterances allegedly made to two of MYD Marine's customers in late 2004.  Co-plaintiffs have attributed those statements to defendant's salesman, Tony Crespo[1].  Co-plaintiffs have characterized those 2004 utterances as "vicious lies" in this case, yet those exact same "vicious

---

[1] In his affidavit filed with this Court of even date Mr. Crespo squarely denies making the 2004 statements attributed to him  [*see paragraphs 6, 7 & 8*].  Even though plaintiffs still have no competent or admissible evidence to prove their unsworn allegations, the dispositive point of law does not turn on whether a jury might find that Crespo uttered the "vicious lies" to Bradford Marine or to Erwin Marine in 2004.  Any claims based upon the 2004 statements are time barred in both the state and federal litigation.

lies" are at the core of the defamation lawsuit which plaintiff Delmonico has filed against this same defendant in the Broward Circuit Court. That case is set for trial on the state court's October 2008 jury docket. Delmonico's failure to have prosecuted that lawsuit in the name of his company and co-plaintiff here, MYD Marine, can only be explained by the fact that any defamation claim asserted by anyone which is based upon any allegedly false utterances made in late 2004 must have been commenced before the end of 2006. Delmonico never attempted to do that in state court, and accordingly neither he nor his company can simply rewrap that defamation claim to be asserted in this Court under the label of a tortious interference claim. The purported victim of a "vicious lie" may not have a "do over" in another lawsuit that is started more than two years after the "vicious lie" was spoken, no matter what buzz words might be concocted to characterize the second assertion of the claim.

In Florida, each defamatory utterance gives rise to a single cause of action, *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (citing *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975)). The various injuries which may result from that episode of defamation are merely separate items of damage arising from the same wrong. Id.

In *Callaway*, the plaintiff's potential defamation claim was clearly barred by the two year statute of limitations, while the asserted claims for tortious interference and abuse of process were based on the same operative facts and circumstances as the failed defamation claim. Id.  The Fourth District Court of Appeal affirmed the dismissal of those other claims because the "single publication/single action rule" does not permit multiple actions to be maintained when they arise from the same utterance upon which a failed defamation claim is based. Id.  As noted in *Callaway*, "[t]he rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." 831 So. 2d at 208 (quoting *Messenger v. Gruner + Jahr USA Publ'g*, 994 F. Supp. 525, 531 (S.D.N.Y. 1998) [citations omitted]).  The concurring opinion noted that "To allow a plaintiff to characterize slander *** as some other tort would enable a plaintiff to circumvent the short limitations period imposed by the legislature." Id at 210

In *Ovadia v. Bloom*, 756 So. 2d 137, 138 (Fla. 3d DCA 2000), a television station broadcast a report on "Dangerous Doctors" and one of those physicians sued for defamation, conspiracy to defame, intentional interference with advantageous business relationships, invasion of privacy,

and conspiracy to commit invasion of privacy. The Third District Court of Appeal affirmed the summary judgment in favor of the defendants, holding that the statute of limitations on the defamation claims had run and, as a consequence, the other tort claims were also properly dismissed. Id. at 140. The court concluded that the single publication/single action rule did not permit multiple actions to be maintained when they arose from the same publication upon which the failed defamation claim was based. Id. at 141.

In *Elegele v. Harley Hotels, Inc*., 689 So. 2d 1305, 1307 (Fla. 5th DCA 1997) the Fifth District noted that "insofar as the statute of limitations is concerned" there was "no difference if the plaintiff alleges intentional defamation (clearly barred) or defamation caused by 'actionable negligence' or by 'negligent supervision.' [The] core cause of action remains an action for libel or slander and **must be brought within two years**." (emphasis added). As such in this case, the separate count for Donovan Marine's "negligent supervision" of Mr. Crespo must also fail as a matter of law. See Am. Compl. ¶¶ 22-27.[2]

---

[2] Other jurisdictions have concluded the same based upon similar facts. In *Magenis v. Fisher Broadcasting, Inc.,* the Oregon Court of Appeals held that an action seeking damages for injury to reputation is defamation, and that despite the plaintiffs characterizing their claim as "false light," the alleged false light statement was plainly defamatory. 103 Or. App. 555, 560 (1990). Accordingly, the court concluded that because those plaintiffs could have filed a claim for defamation, the specific defamation statute of limitations controlled because to hold otherwise would permit a plaintiff to elect longer limitation periods simply by characterizing a defamation claim in a different manner. Id.

Here, plaintiffs have inexplicably refrained from suing for defamation based upon statements made in 2004 that if, as alleged, "were untrue and [known] to be untrue" (<u>see</u> Am. Compl. ¶ 12) when made, were plainly defamatory. Plaintiffs may not now simply morph their untimely defamation claim and instead allege negligent supervision and tortious interference based upon the same operative facts. The core cause of action which the Amended Complaint describes remains an action for defamation, and nothing more. If the defamation claim fails, that can not be circumvented by simply calling it something else. <u>See</u> *American Airlines, Inc. v. Geddes*, 960 So. 2d 830, 834 (Fla. 3d DCA 2007) ("The claim for negligent supervision was based on the alleged defamation; as we have found no actionable claim of defamation, this claim also fails.")

The efforts of these plaintiffs to outflank the clear bar of the statute of limitations should be disallowed. Creative assertion of negligence and tortious interference, when based upon the exact same facts and circumstances that would otherwise form the basis for the time-barred defamation claim, should be summarily adjudicated against these plaintiffs and in favor of the defendant.

## ESSENTIAL ELEMENTS OF ANY TORTIOUS INTERFERENCE CLAIM HAVE BEEN DISPROVEN

At trial, MYD Marine would need to put on competent proof to establish each of the several elements of its tortious interference claim.[3] However, the affidavits which defendant has submitted in support of this summary judgment motion establish that MYD's efforts must fail, because the affidavits specifically disprove certain of those elements.

**ERWIN MARINE** - - Delmonico contends that because of an alleged defamatory statement about him which Todd Erwin overheard an unidentified person say in late 2004, [a statement which Delmonico inexplicably attributes to Crespo], MYD Marine lost unspecified business opportunities that it might have enjoyed with Erwin Marine thereafter. Crespo's affidavit establishes in this record at least three salient facts that completely preclude any of plaintiff's tortious interference claims referable to Erwin Marine: (1) Crespo was not aware that MYD Marine had any relationship with Erwin Marine; (2) Crespo does not know Todd Erwin or his associate Mike Frankinberger, nor did he ever meet with or speak to either of them; and (3) after the summer of 2003, Crespo did not thereafter

---

[3] Delmonico's individual claim is only as to the Negligent Supervision alleged in Count One, where he is the co-plaintiff with his company MYD Marine. He makes no claim for himself under the Count Two tortious interference theory.

say anything to anyone that was derogatory or even uncomplimentary about Delmonico or MYD Marine.

If plaintiff can somehow come up with admissible evidence from which a jury could find that it was Crespo who is actually the mystery person from whom Todd Erwin heard a disparagement of Delmonico in late 2004, any defamation claim based upon that statement became time barred in late 2006, well before the start of this litigation.  Accordingly, for all of the reasons stated in the first section of this motion, the relabeled tortious interference claim referable to Erwin Marine must always fail, as a matter of law, because it is based upon 2004 utterances which are time barred as a defamation claim.

The Crespo affidavit also squarely negates one of the hornbook elements required for any plaintiff to prove a tortious interference claim in Florida. Consistent with its status as an intentional tort[4], every tortious interference case in Florida includes among its required elements some proof that the defendant had some knowledge of the business relationship between the plaintiff and some third party. *International Sales & Service, Inc. v. Austral Insulated Products Corp.,* 262 F.3d 1152 (11th Cir. 2001*); Ethan*

---

[4] Defendant can find no case in Florida [or anywhere else] which recognizes *negligent* interference with business relationships.  Where, as here, the putative defendant is a competitor of the plaintiff, the concept of negligent interference is an absurd oxymoron.

*Allen, Inc. v . Georgetown Manor, Inc.,* 647 So. 2d 812, 814 (Fla. 1994). Crespo's affidavit specifically states that he had no such knowledge with respect to Erwin Marine, and it also confirms that he never even called on Erwin Marine as a prospective customer. Indeed, Crespo has now sworn that he is not aware of having ever met or spoken to Mr. Erwin or his primary business associate, Mr. Frankinberger. Accordingly, even if plaintiff could somehow cobble together some admissible proof that in 2004 Mr. Erwin overheard someone that he cannot now identify, and even if the jury could somehow be given evidence from which it could find that, despite his denial, it was indeed Crespo who was defaming Delmonico as late as 2004, that still does not make out a case as far as this plaintiff's relationship with Erwin Marine.

The intentional tort which MYD Marine has invoked does not allow redress when the interference is only an incidental consequence of the defendant's actions. For MYD Marine to recover anything based upon some species of interference with its relationship with Erwin Marine, there must be evidence that the defendant's interference was both direct and intentional, *Hager v. Venice Hospital, Inc.*, 944 F. Supp 1530 (M.D. Fla. 1996); *Lawler v. Eugene Westhoff Memorial Hospital*, 497 So. 2d 1261, 1264, (Fla. 5th DCA 1986). Indeed, the interference must be shown to have been done with

malice or ill will toward the plaintiff, *IBP, Inc. v. Hady Enterprises, Inc.* 267 F. Supp. 2d 1148 (N.D. Fla. 2002), and an intent to damage the plaintiff's relationship must be shown, *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005). Moreover, the jury must find that malice on the part of Crespo toward MYD Marine was the sole basis for the interference, *Boehm v. American Bankers Insurance Group, Inc.,* 557 So. 2d 91 (Fla. 5th DCA 1990). The Court will please note that all of that evidence is entirely lacking in this record.

**BRADFORD MARINE**[5]  - -  A very high percentage of plaintiffs' total damage claim is predicated upon the loss of profits that MYD Marine would theoretically have made from selling substantially greater quantities of paint products to Bradford Marine than the very healthy amount which Bradford actually did purchase[6] from MYD between 2005 through 2007. At paragraph 20 of the Amended Complaint it is alleged that in late 2004 Crespo uttered the same allegedly defamatory statements to Bradford Marine's then new purchasing manager, as a result of which it is alleged that

---

[5]  Plaintiffs have acknowledged that Bradford Marine and Erwin Marine are their only relationships as to which they claim tortious interference.

[6]  The affidavit of Bradford Marine's Vice President & Superintendent establishes that MYD Marine is still one of several vendors who regularly compete to sell marine paint and paint accessories to Bradford.

Bradford Marine thereafter deliberately and substantially curtailed the amount of marine paint and paint accessories that it bought from MYD Marine.

For all of the same reasons[7] discussed above concerning Erwin Marine, the Single Publication / Single Action Rule completely precludes any 2007 tortious interference claim referable to Bradford Marine because it is based entirely upon a defamatory statement that was allegedly uttered in 2004. That allegedly defamatory utterance is barred by Florida's two year statute of limitations, and the legal result would necessarily be the same even if a jury were to choose to disbelieve Crespo's sworn assertion that he did not say anything derogatory or even uncomplimentary about Delmonico after the fall of 2003.

**The "At-Will" Relationship at Bradford** - The affidavit of Tom Krigger delineates what has always been an essential term of Bradford Marine's dealings with all of its paint suppliers over the years. Specifically, Krigger established that Bradford Marine has not ever had any long term contracts with any of its paint vendors, including MYD. Rather, Bradford Marine periodically places specific purchase orders for specific quantities of

---

[7] In contrast to the situation with Erwin Marine, Crespo does not contend that he was unaware of Bradford Marine's business relationship with his competitor, MYD Marine.

paint with any of several competing paint vendors. The quantity of the materials Bradford orders on any occasion is a function of their near term supply requirements for the jobs they expect to work on in the near term. Mr. Krigger's affidavit also establishes that after a paint vendor fills any particular order there is no further obligation on the part of Bradford to buy any more paint from that vendor, and that all of their relationships with all of their paint vendors have always been terminable "at will" by either party.

Florida case law is clear that an action for tortious interference will not lie where a party interferes with an "at will" contract or relationship. *Ferris v. South Florida Stadium Corp.*, 926 So. 2d 399 (Fla. 3d DCA 2006); *Greenberg v Mount Sinai Medical Center of Greater Miami, Inc.*, 629 So. 2d 252 (Fla. 3d DCA 1993). "This is so because when a contract is terminable at will there is only an expectancy that the relationship will continue. In such a situation, a competitor has a privilege of interference in order to acquire the business for himself." *Greenberg*, 629 So. 2d at 255; *Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 1980), review denied, 411 So. 2d 383 (Fla. 1981). Judge Kovachevich has opined that the defendant in a tortious interference case must plead as an affirmative defense the "at-will" status of the affected contracts, *Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.*, 719 F. Supp. 1072 (M.D. Fla. 1989). In the case at bar, this defendant

has pleaded exactly so, and the affidavit of Mr. Krigger has proven up that allegation.

## NEGLIGENT SUPERVISION AND RETENTION HAVE BEEN DISPROVEN

In the Amended Complaint both plaintiffs claim that defendant breached two duties which it owed to both of them, namely (1) to instruct its employee Crespo to stop spreading "vicious lies" about plaintiffs [Am. Compl. par. 24] ; and (2) to take some unspecified action to prevent Crespo from continuing his "improper conduct" [Am. Compl. par. 23]. Plaintiffs further contend that if defendant could not reasonably prevent Crespo from repeating lies about plaintiff, that it had a duty to terminate Crespo's employment [Am. Compl. par. 25].   The Crespo affidavit filed in support of this motion establishes that he immediately notified his bosses about his incident involving Delmonico, and that the executive vice president of Donovan immediately instructed Crespo to not discuss the matter with anyone except Donovan's counsel.  Crespo's affidavit further establishes that he fully complied with those instructions, and that since the summer of 2003 he has not said anything derogatory or uncomplimentary about Delmonico or his company.

Plaintiffs have still not engaged an expert[8] to opine on the applicable standard of care in these circumstances. Likewise, with the exception of MYD's alleged lost profits which they would assign to the tortious interference claim, they have not articulated any other kind of damages which either plaintiff contends were proximately caused by acts or omissions of the defendant.  No witnesses or exhibits in plaintiffs' Rule 26 disclosure have anything to do with the issue of negligence. Accordingly, there must be a failure of proof at trial on the negligence claim, and this Court should "nip it in the bud" now for that reason alone.

Another reason summary judgment is appropriate for the negligence claim is the utter incongruity of the basic premise of the claim.  It simply makes no theoretical sense.  If Donovan was somehow[9] put on notice in 2003 that its employee had said offensive things that might embarrass a competitor, given the uncontradicted evidence in this record that senior management immediately instructed Crespo not to discuss the matter with anyone [Crespo Affidavit paragraph 4], what else then was Donovan to do in order to fulfill the legal duty which these plaintiffs would now have imposed

---

[8] After several extensions requested by plaintiffs, the Court reset the deadline to June 15, 2008 for the disclosure of expert reports.  Plaintiffs were a full month late thereafter in filing an expert report, and never sought a further extension of the June 15 deadline.   The expert report ultimately filed on July 15 is from a CPA and deals only with the calculation of damages.  A Motion to Strike remains pending referable to that untimely filing.

[9] Delmonico has testified in the state court deposition that he never communicated with Donovan's management about his grievance related to Crespo.

upon it?  An executive order for the surgical removal of Crespo's larynx might have been ultimately effective, but would no doubt have resulted in Crespo's resignation before a willing surgeon could be found.  How would terminating Crespo's employment have prevented him from saying any more uncharitable things about these plaintiffs? Obviously these plaintiffs cannot ever meet the "but for" test which the law of proximate cause would require for any liability to attach to Donovan's failure to do something.  The negligence claim should be disallowed just on the face of the pleadings.

As was more fully stated at page 3, supra, the Single Publication / Single Action Rule is a complete bar not only to the Tortious Interference claim of Count Two, but also the Negligent Supervision and Retention claim of Count One.  See *American Airlines, Inc. v. Geddes*, 960 So. 2d 830, 834 (Fla. 3d DCA 2007) ("The claim for negligent supervision was based on the alleged defamation; as we have found no actionable claim of defamation, this claim also fails.") . In *Elegele v. Harley Hotels, Inc*., 689 So. 2d 1305, 1307 (Fla. 5th DCA 1997) the Fifth District noted that "insofar as the statute of limitations is concerned" there was "no difference if the plaintiff alleges intentional defamation (clearly barred) or defamation caused by 'actionable negligence' or by 'negligent supervision.'  [The] core cause of action remains an action for libel or slander and **must be brought within two**

**years**." (emphasis added).  Summary judgment is entirely appropriate for the negligence claim in this case.

### DELMONICO IS AN INAPPROPRIATE CO-PLAINTIFF

One of the grounds that this Court accepted when it granted in part the Motion To Dismiss the original complaint [DE 4] was the defense contention that Delmonico had no demonstrable claim for himself, and that the only "victim" of any of the wrongful acts alleged in this case is the company of which he is the sole shareholder, MYD Marine.  The only difference between the original complaint and the amended complaint is the new allegation of paragraph 27 that Delmonico has suffered injury to his reputation and standing in the community.   However, there is still nothing in this record to indicate any distinction or separation between the alleged harm to MYD Marine's reputation and goodwill as alleged in paragraph 26 and the mirror image alleged damages which Delmonico claims for himself in paragraph 27.

The impropriety of Delmonico's continued participation as a co-plaintiff was one of the several grounds which were raised in the Motion to Dismiss Amended Complaint [DE 9].  This Court's order denying that motion [DE 15] noted that those legal arguments would be more

appropriately addressed in a summary judgment motion. Accordingly, this motion is defendant's third effort to eliminate Delmonico's relentless but groundless attempt to have the status of a co-claimant for anything before this Court.

I hereby certify that a true copy of the foregoing was transmitted through the Court's CM/ECF system on July 25, 2008 to plaintiffs' counsel, David Ferguson, Esq., and Camar R. Jones, Esq., The Kopelowitz Ostrow Firm, P.A., 200 SW 1st Avenue, 12th Floor, Ft. Lauderdale, FL 33301.

*/s/ A. RODGER TRAYNOR. JR.*
A. Rodger Traynor, Jr.
Florida Bar Number: 241237
**AKERMAN SENTERFITT**
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095
E-mail: rodger.traynor@akerman.com
Attorneys for Donovan Marine, Inc.